DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

GERALD T. WALDEN,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2024-0155

_____

May 2, 2025

Appeal pursuant to Fla. P. App. P. 9.141(b)(2) from the Circuit Court for Hillsborough County; Robin F. Fuson, Judge.

Gerald T. Walden, pro se.

James Uthmeier, Attorney General, Tallahassee, and Clara Murga, Assistant Attorney General, Tampa, for Appellee.

NORTHCUTT, Judge.

Gerald T. Walden appeals the order denying his motion to correct illegal sentences filed under Florida Rule of Criminal Procedure 3.800(a). The State concedes that his sentences are illegal because the trial court improperly delegated its sentencing authority to the Department of Corrections. We agree, and therefore we reverse and remand for further proceedings.

In 2017, a jury found Walden guilty of possessing cocaine, possessing a controlled substance, and soliciting another to commit prostitution. The trial court rejected Walden's request for downward departure sentences and sentenced him to consecutive terms of five years' imprisonment for the felonies and to time served for the misdemeanor. When Walden committed these crimes, he was on conditional release from prison sentences imposed in 1992.[1] He asked the court to order his 2017 sentences to run concurrently with his 1992 sentences. But because Walden's 2017 crimes violated his conditional release, the court questioned whether the prior sentences were "current[.]" It then agreed with the prosecutor's statement that "[i]t would be up to [the Florida Parole Commission] to run it concurrent to ours because there is no sentence yet on theirs," to which the court replied "Right. I can't do that."

Walden asserted in his rule 3.800(a) motion that "the lawyers and the court were under the impression" that the trial court had no discretion to order his 2017 sentences to run concurrently with his 1992

---

[1] Conditional release is a postprison supervision program where an inmate is placed on community supervision for a period of time equal to the amount of gain time the prisoner earned while in prison. *See* § 947.1405, Fla. Stat. (2008); *Logan v. State*, 964 So. 2d 209 (Fla. 5th DCA 2007). The Florida Parole Commission oversees the program and retains jurisdiction over the defendant until his or her conditional release supervision terminates. *Gillard v. State*, 827 So. 2d 316, 317 (Fla. 1st DCA 2002). During that time, upon violation of any of the terms and conditions of release, the Commission may revoke the conditional release. § 947.141(4), Fla. Stat. (2010) ("[T]he [Commission] panel may revoke conditional release . . . and thereby return the releasee to prison to serve the sentence imposed . . . ."). *Crump v. State,* 137 So. 3d 1148, 1149–50 (Fla. 3d DCA 2014).

2

sentences. He accurately pointed out, however, that contrary to the apparent understanding of the court and prosecutor in 2017, he was not to be resentenced for his 1992 crimes based on his conditional release violation. As explained in *Shorter v. State*, 113 So. 3d 940, 941 (Fla. 5th DCA 2013), a defendant who violates conditional release is not resentenced. "[R]ather the Parole Commission makes an administrative determination regarding conditional release, which leaves the original sentence undisturbed." *Id.*; *see also Larson v. State*, 247 So. 3d 26, 31– 32 (Fla. 2d DCA 2018) (explaining the conditional release process).

Therefore, Walden's motion explained, his previous sentences were fixed, and the trial court had discretion under section 921.16(1), Florida Statutes (2016),[2] to order his 2017 sentences to run concurrently with those sentences. *See Shorter*, 113 So. 3d at 941 ("Because a potential punishment for a conditional release violation is not an as-yet undetermined sentence, and the defendant is already subject to a sentence, a court can order a new sentence to run consecutively or concurrently to such a sentence.").

Citing *Richardson v. State*, 947 So. 2d 1219, 1220 (Fla. 1st DCA 2007), Walden maintained that his 2017 sentences were illegal because the trial court had refused to exercise its sentencing discretion under section 921.16(1). Instead, it had left the structure of the sentences to be decided by the Department of Corrections, which has no sentencing authority.

---

[2] Section 921.16(1), Florida Statutes (2016), states in relevant part, "[s]entences of imprisonment for offenses not charged in the same indictment, information, or affidavit shall be served consecutively unless the court directs that two or more of the sentences be served concurrently."

Based on its review of the record, the postconviction court in this case agreed with Walden's assertion that the trial court had failed to appreciate its discretionary authority under section 921.16(1). But it ruled that "[b]ecause this claim—that the Court could have ordered his sentences to run concurrently, but failed to understand that it could do so—would be cognizable on direct appeal, it is not cognizable in this Rule 3.800(a) proceeding." Also, citing *Brooks v. State*, 969 So. 2d 238, 243 (Fla. 2007), the court reasoned that because the trial court *could* have ordered the sentences to run consecutively, the claim was not cognizable in a rule 3.800(a) motion. *Id.* Notwithstanding Walden's assertion that his sentences were illegal under *Richardson*, the court made no mention of that argument when denying Walden's motion.

In *Richardson*, the defendant filed a motion for relief under rule 3.850 based on ineffectiveness of his trial counsel. He complained that his counsel failed to object when the trial court agreed with the suggestion that the Department of Corrections must decide whether his sentence would run concurrently or consecutively to his sentence on a control release violation and that the court could not do so. The First District reversed the summary denial of that motion, pointing out that a trial court does have such authority. *Richardson*, 947 So. 2d at 1220 (citing, *inter alia*, *Scantling v. State*, 711 So. 2d 524, 525–26 (Fla. 1998)). "In fact," the court observed, "the trial court *must*" exercise its discretion to order the sentences to run concurrently or consecutively and "cannot defer the structure of the sentence to the Department of Corrections because the Department lacks such sentencing authority." *Richardson*, 947 So. 2d at 1220 (citing, *inter alia*, *McCarthur v. State*, 766 So. 2d 292 (Fla. 4th DCA 2000) (holding that a trial court must exercise its discretion to order an offender's sentence to run concurrent with or

consecutive to the punishment to be imposed for violating his control release in an earlier case).  "Therefore," the court held, "the appellant has stated a valid reason for his counsel to object."  *Id.* at 1220-21.

The *Richardson* court went on to hold that "[a]dditionally, the appellant's sentence is illegal" because it "is of such a nature that it imposes a kind of punishment that no judge under the entire body of sentencing statutes could possibly inflict under any set of factual circumstances."  *Id.* at 1221 (citing *Carter v. State*, 786 So. 2d 1173, 1181 (Fla. 2001), for its definition of an illegal sentence for purposes of rule 3.800(a)).  This is because "a trial court cannot delegate sentencing authority to an administrative agency."  *Id.* (citing art. I, § 18, Fla. Const.;[3] *Pearson v. Moore*, 767 So. 2d 1235, 1238–39 (Fla. 1st DCA 2000)); *see also White v. State*, 19 So. 3d 407, 407–08 (Fla. 1st DCA 2009) (reversing the denial of a rule 3.800(a) motion, holding that "a trial court cannot defer the structure of a sentence to the Department of Corrections because the executive branch agencies lack sentencing authority" (citing *Richardson*, 947 So. 2d 1219)); *Peters v. State*, 310 So. 3d 1133, 1134 (Fla. 2d DCA 2021) (acknowledging the rulings in *Richardson* and *White* but holding that, unlike in those cases, the factual scenario before the court did not involve a trial court that was deferring sentencing authority to an administrative agency).[4]

---

[3] Article I, section 18 of the Florida Constitution, which *Richardson* cited, states: "No administrative agency . . . shall impose a sentence of imprisonment . . . ."  It is also likely that delegating judicial sentencing authority to the Department of Corrections would violate the separation of powers mandated in article II, section 3, of the Florida Constitution.

[4] Given that *Richardson* expressly applied the definition of illegality that is applicable to rule 3.800 motions and that its holding has been held to govern in rule 3.800 cases, the dissent's complaint that the

5

As in *Richardson,* in the instant case the trial court expressly declined to exercise its discretion to order Walden's sentences to run concurrently or consecutively with prior sentences for which he had violated his control release, and instead it deferred the structure of the sentences to the Department of Corrections. As recognized in *Richardson,* then, Walden's sentences are illegal. The postconviction court was bound by *Richardson* and its progeny, and it erred by failing to follow them. *See Pardo v. State,* 596 So. 2d 665, 666 (Fla. 1992) ("[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts.").[5]

---

motion in *Richardson* was filed under rule 3.850 instead of rule 3.800 is of no moment.

[5] Contrary to the dissent's view, this court's decision in *Platt v. State,* 664 So. 2d 307 (Fla. 2d DCA 1995), does not require a different result. Platt had been sentenced in 1992 for violating his probation on 1989 and 1990 offenses and for committing new 1992 offenses. *Id.* at 308. The circuit court sentenced him to prison on the 1989 and 1990 offenses, and to consecutive probation for the 1992 offenses. *Id.* Thereafter, the Control Release Authority placed him on control release supervision for the 1989 and 1990 sentences, running concurrently with his 1992 probation. *Id.* He later admitted to technical violations of the probation. *Id.*

Unlike the instant case, when being sentenced to prison at his probation violation hearing, Platt did not ask to have the sentences run concurrently with the sentences on the 1989 and 1990 offenses for which he was on control release. *Id.* Instead, when the hearing concluded he "pointed out that the court had not resolved his control release violations" for the earlier offenses, whereupon "[t]he trial court explained that control release was not its responsibility." *Id.* That statement was legally correct; unlike defendants who commit probation violations, a defendant who violates conditional or control release conditions is subject to administrative revocation of his release, but he is not resentenced. 113 So. 3d at 941. Thus, it was not for the court in a probation violation hearing to "resolve" the defendant's control release status.

6

The postconviction court's belief that *Brooks* governed Walden's rule 3.800(a) motion was mistaken. The *Brooks* court held that for purposes of rule 3.800(a) a *sentencing scoresheet error* is harmless if the trial court could have imposed the same sentence under a correct scoresheet. 969 So. 2d at 244. Walden's case does not involve a scoresheet error. And although *Brooks* arguably might be read to apply the "could have imposed" test to sentencing errors generally, the district courts of appeal have not applied it so broadly. As mentioned, they have followed *Richardson* in cases such as Walden's, *Brooks* notwithstanding. *Cf. White*, 19 So. 3d at 407–08. Similarly, courts have held that the *Brooks* "could have imposed" test is inapplicable when reviewing an

---

Platt's control release was revoked when he returned to prison, and the Department of Corrections ran his new sentences consecutive to the old ones. *Platt*, 664 So. 2d at 308. Only then did Platt first seek to serve the sentences concurrently, by way of a rule 3.800(a) motion requesting an after-the-fact "clarification" that his new sentences should be concurrent with the prior ones. *Id.* This court affirmed the denial of Platt's motion, concluding that it entitled him to no relief. *Id.* This, too, was legally accurate because rule 3.800(a) only permits corrections of illegal sentences or incorrect sentencing scoresheets. Absent a scoresheet correction, it does not authorize the clarification or alteration of a legal sentence.

Notably, although the *Platt* opinion speculated that the trial court "apparently assumed that DOC would exercise some reasoned discretion in deciding whether to run the reinstated sentences concurrently or consecutively" with the new sentences, this court did *not* hold that Platt must be denied relief even if the sentencing court had improperly delegated its authority to the Department of Corrections. *Platt*, 664 So. 2d at 308. To the contrary, the sentencing court in *Platt* was not asked to impose concurrent sentences. It delegated nothing, and this court did not hold otherwise. *Id.* Rather, Platt's sentencing court correctly declined to infringe on the Department's administrative responsibility to "resolve" the defendant's control release violations, and the postconviction court correctly rejected Platt's motion to "clarify" that refusal. *Id.* Our affirmance in *Platt* simply has no bearing here.

7

erroneous failure to resentence a defendant under a corrected scoresheet after the vacation of one of his multiple convictions. *See Palmer v. State*, 368 So. 3d 18, 19 (Fla. 4th DCA 2023) (reversing the denial of a rule 3.800(a) motion and directing the lower court to use its discretion in resentencing under a revised scoresheet; specifically observing that the court would have the option to reimpose the original sentence on the surviving count); *Pierce v. State*, 281 So. 3d 569, 570–71 (Fla. 5th DCA 2019) (expressly holding that the *Brooks* "could have imposed" harmless error standard does not apply when a defendant seeks resentencing under a revised scoresheet after a vacated conviction); *Termitus v. State*, 279 So. 3d 324, 327 (Fla. 5th DCA 2019) (same).

Finally, the postconviction court's assertion that "[c]laims of trial court error that could have been raised on direct appeal are not cognizable in a Rule 3.800(a) motion" was simply incorrect and illogical. Rule 3.800(a) provides for the correction of an illegal sentence, an incorrect calculation made in a sentencing scoresheet, or an erroneous sexual predator designation. Manifestly, *all* such errors can be raised on direct appeal. If, as the postconviction court posited, such appealability would preclude relief under rule 3.800(a), the rule would be irrational and entirely superfluous. To the contrary, rule 3.800(a) allows a court to correct an illegal sentence imposed by it "at any time" and does not qualify that authority if the error is cognizable on direct appeal.[6]

---

[6] The postconviction court mistakenly relied on a decision in which this court affirmed the denial of a rule 3.800(a) motion because the kinds of errors asserted in the motion in that case simply were not cognizable under rule 3.800(a). In *Steward v. State*, 931 So. 2d 133, 134 (Fla. 2d DCA 2006), we rejected claims of trial court error, insufficiency of the evidence, and erroneous sentencing procedure because they were not proper grounds for relief under rule 3.800(a). We observed that those complaints should have been made on direct appeal, and that Steward's

For the foregoing reasons, we concur in the State's concession that the order denying Walden's motion to correct his illegal sentences must be reversed. Accordingly, we remand for proceedings consistent with this opinion.

Reversed and remanded.

ROTHSTEIN-YOUAKIM, J., Concurs.
BLACK, J., Dissents with opinion.


BLACK, Judge, Dissenting.

Because this court is bound by its decision in *Platt v. State*, 664 So. 2d 307 (Fla. 2d DCA 1995), and the law concluding that rule 3.800(a) redresses illegal terms and conditions of sentences but not errors in the process employed to impose sentences, I dissent.

In *Platt,* this court reviewed an order denying Platt relief from a sentencing issue. Although the *Platt* opinion provides limited details, this court concluded that the postconviction court properly denied Platt's motion pursuant to Florida Rule of Criminal Procedure 3.800(a). In so concluding, we noted that the trial court had advised Platt that Platt's control release violations were "not its responsibility" and that, because the trial court did not express an intention for its sentences to run concurrently with any other sentences, the Department of Corrections (DOC) applied section 921.16(1), Florida Statutes (1993), such that Platt's new sentences ran consecutively to the sentences for which he had been on control release. 664 So. 2d at 308. "This result[ed] in a total sentence that [was] roughly twice as long as the sentence discussed" at the sentencing hearing and for which Platt sought relief.

_____

ineffective assistance of counsel claim had to be brought by motion under rule 3.850.

9

*Id.* In affirming the denial of the rule 3.800(a) motion, we concluded that "Platt's motion entitle[d] him to no relief," but our affirmance was without prejudice to Platt's timely filing of a motion under Florida Rule of Criminal Procedure 3.850. *Id.*

Like the trial court in *Platt*, the trial court in Walden's 2017 case did not understand that the determination to run Walden's sentences in the 2017 case concurrently with or consecutively to the existing sentences in his 1992 case rested with it and was not dependent on action by the DOC. *See Platt*, 664 So. 2d at 308 ("The trial court apparently assumed that DOC would exercise some reasoned discretion in deciding whether to run the reinstated sentences concurrently or consecutively with the sentences on the 1992 offenses. DOC, on the other hand, relied on section 921.16(1), Florida Statutes (1993), and *Kirkland v. State*, 633 So. 2d 1138 (Fla. 2d DCA 1994), to impose automatic consecutive sentences in the absence of overriding instructions from the trial court."). Both Platt and Walden sought relief from consecutive sentences through the filing of rule 3.800(a) motions. Because the ultimate issue in both cases is the legality of the sentences, I find *Platt* controlling and would therefore affirm the postconviction court's order denying Walden's rule 3.800(a) motion.

Moreover, I find no error in the postconviction court's determination that Walden's sentences are not illegal for purposes of rule 3.800(a). *Richardson*, the case upon which Walden and the majority rely, addresses a sentencing error in the context of rule 3.850 not rule 3.800. The two rules and the relief available thereunder are not interchangeable. *See Morgan v. State*, 350 So. 3d 712, 716 (Fla. 2022) ("[I]n rule 3.800(a) proceedings the process of sentence correction is not complete until an order is entered imposing a corrected sentence. . . . Rule 3.850

10

characterizes motions to obtain relief from sentences as 'motion[s] to vacate a sentence.' There is no analogous provision in rule 3.800. Sentences are corrected under rule 3.800(a) as an extended part of the sentencing process in the underlying criminal case. Under rule 3.850, sentences are vacated and then—in a subsequent, separate proceeding— a new sentence is imposed." (alteration in original) (citation omitted)). On remand, Walden could again receive consecutive terms of imprisonment.[7]

In that respect, the postconviction court's denial of relief is not only consistent with *Platt* but with other precedent out of this court and with the supreme court's consideration of what constitutes an illegal sentence subject to correction under rule 3.800.

> Rule 3.800(a) is intended to provide relief for a narrow category of cases in which the sentence imposes a penalty that is simply not authorized by law. It is concerned primarily with whether the terms and conditions of the punishment for a particular offense are permissible as a matter of law. *It is not a vehicle designed to re-examine whether the procedure employed to impose the punishment comported with statutory law and due process.*

*Judge v. State*, 596 So. 2d 73, 77 (Fla. 2d DCA 1991) (en banc) (emphasis added). This court's explanation of the scope of rule 3.800(a) has been adopted and repeatedly recognized by the supreme court. *See, e.g.,*

---

[7] The sentencing hearing transcript in Walden's 2017 case reflects an assertion by the State that Walden scored 101 points on his scoresheet. If that assertion is accurate, Walden's lowest permissible sentence exceeds the statutory maximum for the felonies for which he was convicted and is the sentence that must be imposed. *See State v. Gabriel*, 314 So. 3d 1243, 1252 (Fla. 2021). If accurate, and because of the majority's conclusion that Walden's sentences are illegal, on remand Walden may be sentenced to a longer prison term than he is currently serving. *See Boyd v. State*, 387 So. 3d 454, 461 (Fla. 1st DCA 2024).

*Martinez v. State*, 211 So. 3d 989, 991-92 (Fla. 2017); *Bover v. State*, 797 So. 2d 1246, 1249 (Fla. 2001).

"[A]n illegal sentence subject to correction under the rule must be one that no judge under the entire body of sentencing laws could possibly impose." *Wright v. State*, 911 So. 2d 81, 83 (Fla. 2005) (citing *Carter v. State*, 786 So. 2d 1173, 1178 (Fla. 2001)). That is, the *sentence* itself must be one that no judge could impose under any circumstances. *See Carter*, 786 So. 2d at 1178 ("To be illegal within the meaning of rule 3.800(a) *the sentence must impose a kind of punishment that no judge under the entire body of sentencing statutes could possibly inflict under any set of factual circumstances*. On the other hand, if it is possible under all the sentencing statutes—given a specific set of facts—to impose a particular sentence, then the sentence will not be illegal within rule 3.800(a) even though the judge erred in imposing it." (quoting *Blakley v. State*, 746 So. 2d 1182, 1186-87 (Fla. 4th DCA 1999))); *cf. Ives v. State*, 993 So. 2d 117, 120 (Fla. 4th DCA 2008) ("A deficiency merely in the procedure employed, where the movant actually qualifies for an enhanced sentence, does not result in an illegal sentence.").

In fact, Walden does not argue that the trial court could not have imposed consecutive sentences. *See Folsom v. State*, 383 So. 3d 843, 845 (Fla. 1st DCA 2023) ("The essence of Folsom's argument is not that the trial court did not have the authority to impose probation. . . . There is nothing in the law that prevented the trial court from including the terms and conditions of drug-offender probation as part of Folsom's overall probation. On its face, then, Folsom's rule 3.800(a) motion failed to state a basis for relief."), *review dismissed*, No. SC2024-0832, 2024 WL 2838298 (Fla. June 5, 2024); *Robinson v. State*, 365 So. 3d 467, 469 (Fla. 4th DCA 2023) (concluding that Robinson's claim was "not

12

cognizable under rule 3.800(a)," where "the sentences he received were technically not illegal because they could have been imposed under Florida's sentencing laws").  Rather, Walden challenges the *procedure* that led to his consecutive sentences.  *See Heare v. State*, 283 So. 3d 390, 392 n.1 (Fla. 2d DCA 2019) ("[T]he term 'illegal sentence' in rule 3.800(a) does not concern itself with errors in sentencing procedure and reaches only *sentences* 'that no judge under the entire body of sentencing laws could possibly impose.' " (emphasis added) (quoting *Wright*, 911 So. 2d at 83)).  Such a challenge is not cognizable in a rule 3.800(a) motion. *See Folsom*, 383 So. 3d at 845 (affirming denial of rule 3.800(a) motion and stating that "a challenge to the sentencing process or to the order that resulted from that process" is not a challenge to the legality of the sentence itself that is cognizable in a rule 3.800(a) motion); *Lindquist v. State*, 155 So. 3d 1193, 1194 (Fla. 2d DCA 2014) ("Lindquist's specific claim takes issue with the procedure employed during sentencing, as opposed to the actual sentence imposed, and is not cognizable in a rule 3.800(a) motion."); *cf. Martinez*, 211 So. 3d at 992 (concluding that a challenge to the procedure "that led to the imposition of [a] mandatory minimum sentence" is not cognizable in a rule 3.800(a) motion).

Quite simply, the terms and conditions of Walden's sentences are not illegal.  *Cf. Judge*, 596 So. 2d at 77 (stating that "[t]he dispositive issue in this appeal is whether the written notice required in section 775.084 is a procedural aspect of sentencing or a substantive requirement that affects the terms and conditions of a sentence" and concluding that it is procedural and therefore not reviewable under rule 3.800(a)); *Thomas v. State*, 921 So. 2d 657, 661 (Fla. 2d DCA 2006) (concluding that a sentence may have been improper but was not illegal where "the coterminous language was misunderstood by the court and

13

the parties when the original sentence was negotiated and imposed"); *Martinez v. State*, 393 So. 3d 851, 851 (Fla. 1st DCA 2024) ("A claim alleging the trial court misunderstood its sentencing options is not cognizable under Florida Rule of Criminal Procedure 3.800(a)."). They would be illegal if the trial court could not have imposed the 2017 sentences consecutively to the 1992 sentences, but it is apparent that the trial court could have imposed consecutive sentences. *See* § 921.16(1), Fla. Stat. (2017).

The issue of whether Walden's sentences were improperly imposed is cognizable on direct appeal or in a rule 3.850 motion. *See, e.g.*, *Widemond v. State*, 27 So. 3d 162, 163 (Fla. 1st DCA 2010). And it is in that limited respect that the First District's directive in *Richardson*, as an appeal from the denial of a rule 3.850 motion, is correct. However, where the conclusion reached by the majority—that the sentences at issue are illegal—runs afoul of the supreme court's recognition that challenges to the procedure that leads to the imposition of an otherwise legal sentence are not cognizable in a rule 3.800(a) motion, I must dissent. *See* *Martinez*, 211 So. 3d at 992. Accordingly, I would affirm the postconviction court's order.

_____

Opinion subject to revision prior to official publication.